# EXHIBIT 3



1101 Brickell Avenue
South Tower 8th Floor
Miami, Florida 33131
United States

Phone: 786 - 574-6210
Booking Agent: Jeremy Norkin



**UNITED TALENT**
AGENCY

**CONTRACT # 123539**

Agreement made this date Tuesday, June 21, 2016 by and between:

**Mirage Entertainment F/S/O Mariah Carey** (hereinafter referred to as Artist) and
**FEG ENTRETENIMIENTOS SA** (hereinafter referred to as Promoter(s))

It is mutually agreed that the Promoter engages the Artist to perform the following engagement upon all the terms and conditions hereinafter set forth:

**Artist:** MARIAH CAREY  **Billing:** HEADLINE

**Venue:** GEBA San Martin
Av Figeuroa Alcorta 5575
Buenos Aires, 1425, Argentina

**Date(s):** Friday, 28 October 2016

| | | | | | | |
|---|---|---|---|---|---|---|
| Doors Open: | Per Advance | Set Length: | Per Advance | Load in: | Per Advance | |
| Showtime: | Per Advance | Curfew: | Per Advance | Sound Check: | Per Advance | |
| On Stage: | Per Advance | Age Limits: | Per Advance | | | |

**Tickets:**

| Description | Quantity | Comps/Kills | Sellable | Price | Deducts | Totals |
|---|---|---|---|---|---|---|
| VIP Fans (2,500 ARS) | 4438 | 222 | 4216 | 156.26 | | 658,792.16 USD |
| VIP Gold (2,200 ARS) | 3040 | 152 | 2888 | 137.50 | | 397,100.00 USD |
| Seated Floor (1,500 ARS) | 1980 | 99 | 1881 | 93.75 | | 176,343.75 USD |
| GA/Standing (600 ARS) | 7200 | 360 | 6840 | 37.50 | | 256,500.00 USD |
| Total: | 16658 | 833 | 15825 | Gross Potential: | | 1,488,735.91 USD |
| Deductions: | Name | | | | Percentage | Amount |
| | 7% Discount | | | | | 104,235.91 USD |
| | | | | Total deductions: | 0.00% | 104,235.91 USD |
| | | | | Net Gross Potential: | | 1,384,500.00 USD |

**Terms:** Guaranteed Fee $ 575,000.00 USD GROSS

Flat guarantee of $575,000 USD GROSS in the concept of Artist Fee subject to 24.5% WHT for a NET of $434,125 USD NET.
PURCHASER shall pay for and provide, as per ARTIST specifications: accommodations for band and crew in 5* hotel for up to three (3) nights with Wi-Fi included / local ground transportation / production: sounds, lights and backline / visas and or work permits.
PURCHASER is responsible to pay any taxes in Argentina and provide ARTIST with Certificate.  *CONSULATE FEE ONLY*
ARTIST is responsible for: airfares / freight / excess baggage / per diems.
No advertising or promotion shall be done until a deposit has been received, contract has been signed and artwork has been approved.

**Additional Provisions:** Any and all exhibits, riders/festival riders and additional clauses attached hereto, including without limitation, 'Exhibit A' and Artist's Rider, are hereby incorporated into this Agreement by this reference.

**Payments:** Deposits to United Talent Agency by certified check or bank ACH quoting reference 123539

| Due Date | Comment | GROSS Due | NET Due |
|---|---|---|---|
| Wednesday June 22, 2016 | 1st Deposit due upon receipt of contract. | 230,000.00 USD | 173,650.00 USD |
| Wednesday, July 20, 2016 | 2nd Deposit | 172,500.00 USD | 130,237.50 USD |
| Thursday, September 8, 2016 | Balance | 172,500.00 USD | 130,237.50 USD |
| Total | | 575,000.00 USD | 434,125.00 USD |

**Balance:** The balance of the fee is to be paid to United Talent Agency to be received on or before September 8, 2016.

It is expressly understood by the Promoter(s) and Artist who are party to this contract that neither United Talent Agency, the Federation or the Local Union or their respective officers, employees, shareholders and affiliate entities are parties to this contract in any capacity, and that neither United Talent Agency, Federation or the Local Union or their respective officers, employees, shareholders and affiliate entities shall be liable for the performance or breach of any terms or provisions contained herein.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first above written.

| Mirage Entertainment F/S/O Mariah Carey | FEG ENTRETENIMIENTOS SA |
| | Marcelo Figoli |
| x _____ Date | x _____ Date |
| Print Name | Print Name |
| 4123 Lankershime Blvd, Los Angeles, California 91602, United States | Avenida Figueroa Alcorta 3221 Buenos Aires C1425CKL, Argentina |
| | +54 11 4809 4600 |
| | Contact: Marcelo Figoli |
| | Email: mfigoli@fenix.com.ar |

Scanned by CamScanner

Exhibit 3
Page 16

1101 Brickell Avenue
South Tower 8th Floor
Miami, Florida 33131
United States

Phone: 786 - 674-6210

**UNITED TALENT**
AGENCY

**CONTRACT # 123539**

| Payments by bank wire to United Talent Agency quoting reference #123539 |
|---|
| Bank: City National Bank, 400 N Roxbury Drive, Beverly Hills, CA 90210 |

| Sort Code: | Account #: | Swift: | CINAUS6L | Currency: | USD |
| IBAN #: | BIC #: | ABA #: | 122016066 | Transit #: | |

Promoter must advise their bank that funds are to be paid as per the requested currency and not converted by an intermediate or remitting bank

Page 2 of 6

Contract No. 123539 with United Talent Agency

Scanned by CamScanner

Exhibit 3
Page 17



1101 Brickell Avenue
South Tower 8th Floor
Miami, Florida 33131
United States



UNITED TALENT
AGENCY

Phone: 786 - 574-5210

## ADDITIONAL CLAUSES FOR CONTRACT # 123539

**Artist:**   MARIAH CAREY

1. SPONSORS
   Any sponsorships are subject to Artist final approval.

2. ACCOMODATIONS
   Purchaser to provide and pay for five star hotel accommodations, per Artist specifications.

3. ARTIST RIDER
   Purchaser shall provide and pay for all terms and conditions in the Artist rider and shall comply with all provisions thereof.

4. ~~CANCELLATION~~
   ~~Artist has the right to cancel this engagement, without liability, by giving Purchaser notice 30 days prior to the commencement date of the engagement date hereunder.~~

5. FORCE MAJEURE / INCLEMENT WEATHER
   The agreement of the Artist to perform is subject to proven detention by sickness, accidents, riots, strikes, epidemics, acts of God, or any other legitimate conditions beyond his control.

6. GROUND TRANSPORTATION
   Purchaser to provide and pay for first class, professionally driven local ground transportation, per Artist specifications.

7. ~~INCLEMENT WEATHER~~
   ~~In the event of inclement weather that renders any performance impossible, hazardous or unsafe, Purchaser shall remain liable for payment of the full agreed upon compensation even if such performance is prevented by such weather conditions.~~

8. SECURITY
   Purchaser to provide and pay for security, per Artist specifications.



Page 3 of 6

Contract No. 123539 with United Talent Agency

Scanned by CamScanner

Exhibit 3
Page 18



1101 Brickell Avenue
South Tower 8th Floor
Miami, Florida 33131
United States



UNITED TALENT
AGENCY

Phone: 786 - 574-5210

**EXHIBIT A FOR CONTRACT # 123539**

**Artist:** MARIAH CAREY

1. Reproduction of Performance:

Purchaser shall not and shall not authorize any third party to record, broadcast, televise, photograph or otherwise reproduce the audio, visual and/or audio-visual performance, in whole or in part, rendered by Artist hereunder. If Purchaser televises the performance hereunder on a jumbo-tron or similar screen during Artist's performance, then any and all tapes or other recordings – physical, digital or other – created for purposes of such real-time broadcast, shall be surrendered by Purchaser to Artist at the completion of Artist's performance.

2. Merchandise:

Artist shall have the exclusive right to sell souvenir programs, photographs, records and any and all types of Artist merchandise including, but not limited to, articles of clothing (i.e., t-shirts, hats, etc.), posters, stickers, and any other merchandise Artist wishes to sell within Artist's discretion, on the premises of the place of performance without any participation in the proceeds by Purchaser, subject to concessionaire's requirements, if any. MERCH RATE 70/30 VENUE SELLS

3. Right to Likeness:

Artist's name, likeness, image, and/or biographical data shall not be used by Purchaser or any other party under the control of Purchaser, to endorse, promote or otherwise advertise Purchaser, any commercial tie-in, any sponsor, or any other product or service connected with Purchaser, unless otherwise agreed between Artist and Purchaser, in writing, prior to Artist's arrival at the performance venue.
IN ALL CASES ARTIST CONSIDERS THAT PURCHASER IS IN FAILURE OF ITS OBLIGATIONS ARTIST

4. Termination: SHALL NOTIFY IN WRITTEN THE REASON OF SUCH FAILURE TO ALLOW PURCHASER to FIX WITHIN 48 HOURS FROM NOTIFICATION.

In the event Purchaser refuses or neglects to provide any of the material items or to perform any of its material obligations per the Agreement and this Exhibit A, and/or fails to timely make any of the payments as provided herein, then Artist shall have the right, in addition to any other remedies which may be available to Artist at law and in equity, to refuse to perform in accordance with the terms of the Agreement, to retain any amounts theretofore paid to Artist (or Artist's designee) by Purchaser (or Purchaser's designee), and, Purchaser shall remain liable to Artist for the immediate payment of the full amount of the Artist Guarantee set forth in the Agreement. In addition, if on or before the date of any scheduled performance, Purchaser has failed, neglected or refused to perform any contract with any other performer for any other engagement, or if the financial standing or credit of Purchaser worsens after Purchaser and Artist's representative agree to the performance which is the subject hereof, then Artist shall have the right to cancel this engagement without penalty by notice to Purchaser to that effect, and Artist shall have the right to retain any and all deposit monies paid to Artist by Purchaser, and Purchaser shall remain liable to Artist for the immediate payment of the full amount of the Artist Guarantee herein set forth.

5. Sickness / Accident / Force Majeure/ INCLEMENT WEATHER

In the event of Artist illness or serious injury, or if a performance is prevented, rendered impossible or infeasible by an Act of God, any act or regulation of any public authority or bureau, civil tumult, strike, epidemic, interruption or delay of transportation services, war conditions, emergencies, or any other similar or dissimilar cause beyond the control of either Artist or Purchaser (each a "Force Majeure Occurrence"), it is understood and agreed by the parties that there shall be no claim for damages by either party against the other and each party's obligations hereunder shall be deemed waived and any deposit monies paid to Artist by Purchaser shall be refunded to Purchaser. ~~Notwithstanding the foregoing, if Artist's performance is prevented by a Force Majeure Occurrence, but Artist is present, ready, willing and able to render its services in accordance with the terms hereof, then Purchaser shall pay Artist the full amount of the Artist Guarantee. The parties acknowledge and agree that the occurrence of the H1N1 virus (i.e., swine flu) in an area in close proximity to the performance venue shall not in and of itself be deemed a Force Majeure Occurrence, unless the US Department of Health and Human Services officially declares the virus to be an epidemic affecting the particular state in which the performance is scheduled to take place.~~

6. Controlling Authority:

Artist shall have the sole and exclusive control over the production, presentation and performance of the engagement hereunder including, but not limited to the details, means and methods of the performance of the performing artists hereunder, and Artist shall have the sole right to make changes to the performing personnel.

~~7. Weather:~~

~~Inclement weather rendering performance impossible, infeasible or unsafe shall not be deemed a Force Majeure Occurrence and payment of the full amount of the Artist Guarantee shall be made by Purchaser to Artist notwithstanding. If Artist is present, ready, willing and able to render its services as contracted hereunder, irrespective of weather the full amount of the Artist Guarantee shall be paid by Purchaser to Artist~~

Page 4 of 6

Contract No. 123539 with United Talent Agency

Scanned by CamScanner

Exhibit 3
Page 19



8. ~~Cancellation:~~

~~Unless stipulated by the parties to the contrary, in writing, Purchaser agrees that Artist may cancel the engagement hereunder without liability by giving Purchaser written notice thereof as least thirty (30) days prior to the date of performance. Artist shall have the right to terminate this Agreement without liability to Purchaser if Purchaser fails to sign and return the Agreement within ten (10) days of Purchaser's receipt thereof.~~

9. Independent Contractor:

It is agreed that Artist and Purchaser each signs this Agreement as an independent contractor and not as employee of the other. This contact shall not in any way be construed so as to create a partnership, employer/employee relationship or joint venture between the parties, nor shall Artist for any reason by its signature hereof be held liable in whole or in part for any obligation of Purchaser or which may be incurred by Purchaser in its carrying out any of the provisions hereof or otherwise.

10. Authority for Inconsistencies:

In the event of any inconsistency(ies) between the provision of the Agreement (including Exhibit A) and the provision(s) of any rider, addendum, exhibit or any other attachments hereto, the parties agree that the provisions of this Agreement shall control.

11. Indemnification Clause:

Purchaser hereby indemnifies and hold Artist, as well as Artist's agents, representatives, principals, employees, contractors, officers and directors ("Indemnitees"), harmless from and against any loss, damage, or expense, including reasonable attorney's fees incurred or suffered by or threatened against Artist or any of the Indemnitees in connection with or as a result of:

(a) any act or failure to act by Purchaser, its employees, agents, representatives, contractors, officers and/or directors ("Purchaser Parties");
(b) Purchaser's and/or Purchaser Parties' breach of any of the warranties and representations made by Purchaser hereunder or in any addendum or rider(s) attached hereto;
(c) Purchaser's and/or Purchaser Parties' breach of any of the terms hereof and/or of any addendum and/or rider(s) attached hereto;
(d) any claim for personal injury or property damage or other brought by or on behalf of any third party as a result of or in connection with the engagement, which claim does not result from the active and willful negligence of Artist.

12. Dispute Resolution:

This Agreement and all questions arising hereunder shall be governed by, and construed in accordance with, the laws and decisions of New York without giving effect to the principles thereof relating to conflicts of law. Each of the parties hereto (a) irrevocably agrees that the federal courts of the State of New York State shall have sole and exclusive jurisdiction over any suit or other proceeding arising out of or based upon this Agreement, (b) submits to the venue and jurisdiction of such courts and (c) irrevocably consents to personal jurisdiction by such courts.

13. Conflict of Laws:

Nothing in this Agreement shall require the commission of any act contrary to law or to any rules or regulations of any union, guild or similar body having jurisdiction over the services and personnel to be furnished by the Purchaser to Artist hereunder. If there is a conflict between any provision of this Agreement and any law, rule or regulation, such law, rule or regulation shall prevail and this Agreement shall be curtailed, modified and/or limited only to the extent necessary to eliminate such conflict. Artist agrees to comply with all regulations and requirements of any union(s) that may have jurisdiction over any of the said materials, facilities, and personnel to be furnished by Purchaser, of which Artist is advised by Purchaser, in writing, prior to arrival at the performance venue.

14. United Talent Agency as Agent:

It is agreed that United Talent Agency ("Agent") is not a party to the contract and acts herein only as the agent for Artist. As such, Agent is not responsible for any act of commission or omission on the part of either Purchaser or Artist. In furtherance thereof and for the benefit of Agent, it is agreed that neither Artist or Purchaser will name or join Agent as a party in any civil action or suit arising out of, in connection with, or related to any act(s) of commission or omission of Purchaser or Artist hereunder. If at any time there shall be a controversy between Purchaser and Artist with respect to the monies for the performance(s) covered hereunder which are held by Agent in its trust account ("Trust Funds"), Agent may upon notice to Purchaser and Artist either: (i) hold the Trust Funds until otherwise directed by a written instrument signed by Purchaser and Artist or by an order, decree or judgment by a court of competent jurisdiction which, by lapse or otherwise, shall no longer be or shall not be subject to appeal or review, or, (ii) deposit the Trust Funds in any court of competent jurisdiction pending the final determination of any dispute among the parties hereto. Upon delivery of the Trust Funds in accordance herewith, the obligations of the Agent shall cease with respect thereto and it shall not be required to perform any further acts whatsoever pursuant to this Agreement.

15. Assignment / Transfer:

This Agreement: (a) shall not be assigned or transferred without the written consent of both parties; (b) contains the sole and complete understanding of the parties hereto with respect to the subject matter hereof, and, (c) may not be amended, supplemented, varied or discharged, except by a written instrument, signed by both parties. The person executing this Agreement on Purchaser's behalf warrants his/her authority to do so. The terms, "Purchaser" and "Artist" as used herein shall include and apply to the singular, the plural and all genders.

Scanned by CamScanner

Exhibit 3
Page 20



16. Counterparts:

This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one single agreement between the parties. The parties agree that transmission to the other party of this Agreement with its facsimile signatures shall suffice to bind the party transmitting the same to this Agreement in the same manner as if an original signature had been delivered. Without limitation of the foregoing, each party who transmits this Agreement with its facsimile signature covenants to deliver the original thereof to the other party as soon as practicable thereafter.

17. Waiver:

No delay or omission by either party to exercise any right or power it has under this Agreement shall impair or be construed as a waiver of such right or power. A waiver by either party of any breach or covenant shall not be construed to be a waiver of any succeeding breach or any other covenant. All waivers must be in writing and signed by the party waiving its rights.

18. Confidentiality:

The terms of this Agreement, as well as correspondence and documentation related to this Agreement, are confidential to the parties and may not be disclosed to any third parties without the prior written consent of the parties hereto, except as disclosure may be required to professional advisors or by law or court order, or for carrying out the purposes of this Agreement. Further, the parties shall treat as confidential all information, data and documents acquired by each other relating to the business affairs of the other, except as such information may already be in the public domain. Notwithstanding anything to the contrary contained herein, if Artist is subject to a recording contract which mandates disclosure of show- and touring-related information and documentation to the record label as part of that contract, then any disclosures made by Artist (or Artist's agent or representative) in compliance therewith (including, without limitation, this Agreement and documentation ancillary hereto), shall be permitted and shall not be deemed a breach of the confidentiality provision(s) hereof by Artist (or Artist's agent or representative).

19. Indemnity and Insurance:

(a) Purchaser hereby indemnifies and holds harmless Artist (and their respective directors, officers, shareholders, employees, agents (including, without limitation, United Talent Agency) and representatives) (collectively, the "Artist Indemnified Parties") from and against any and all third party claims, liabilities, suits, damages and expenses (including reasonable third party legal fees and expenses) suffered or incurred by the Artist Indemnified Parties as a result of Purchaser's: negligence, willful actions or omissions, breach of this Agreement or breach of Purchaser's representations and warranties made herein.

(b) On the date of the contracted performance and through completion of Artist's load-out, Purchaser shall have valid, current and appropriate commercial general liability insurance with limits of no less than $1,000,000 (US) per occurrence to cover its liability as noted above, and worker's compensation insurance for Purchaser's employees in accordance with legal requirements. As soon as reasonably possible after execution hereof, Purchaser shall provide Artist with a certificate evidencing the above insurance.

20. Licenses:

Purchaser shall be responsible for acquiring all licenses, permits and authorizations required to be obtained from all union(s), guild(s), performing rights societies, and public authorities having jurisdiction over the presentation of the performance, and all such licenses, permits and authorizations shall be valid and current as of the performance date and during the Term of this Agreement.

FEG ENTRETENIMIENTOS SA
Marcelo Figoli

X _____  Date _____

Print Name
Avenida Figueroa Alcorta 3221 Buenos Aires, C1425CKL Argentina
+54 11 4809 4600
Contact:   Marcelo Figoli
Email:     mfigoli@fenix.com.ar

Contract No. 123539 with United Talent Agency



Exhibit 3
Page 21