UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------
MIRAGE ENTERTAINMENT, INC.,

                         Plaintiff,

           -against-

FEG ENTRETENIMIENTOS S.A., *et al.*,

                         Defendants.
------------------------------------------------------------

18cv581

OPINION & ORDER

WILLIAM H. PAULEY III, Senior United States District Judge:

        Mirage Entertainment, Inc. ("Mirage") and Mariah Carey ("Carey," and with Mirage, "Counterclaim Defendants") move to dismiss counterclaims asserted by FEG Entretenimientos S.A. ("FEG Argentina") and FEG S.A. ("FEG Chile," and with FEG Argentina, "Counterclaimants") in this breach of contract action. Counterclaimants assert that Counterclaim Defendants breached three contracts between the parties by unilaterally cancelling two South American concerts without affording Counterclaimants an opportunity to cure. Counterclaimants also allege that a 2016 tweet (the "Tweet") that Carey posted to her Twitter account was defamatory. For the reasons that follow, Counterclaim Defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND

        The allegations in the Counterclaims are accepted as true on this motion. Counterclaimants are South American concert promoters. (Countercls. for Breach of Contract & Defamation, ECF No. 14 ("Counterclaims") ¶¶ 4–5, 10.) Mirage operates as Carey's "loan out

corporation."[1] (Counterclaims ¶¶ 6, 11.) In essence, Mirage contracts with others for Carey's live performances. (Counterclaims ¶ 11.) Non-party United Talent Agency ("UTA") coordinates transactions between artists and concert promoters. (Counterclaims ¶ 11.)

In June 2016, FEG Argentina and Mirage contracted for Carey to perform in Buenos Aires, Argentina on October 28, 2016 (the "Argentina Agreement"). (Counterclaims ¶¶ 15–17.) FEG Argentina agreed to pay Mirage a fee of $575,000 in installments. (Counterclaims ¶¶ 17–18.) FEG Argentina executed the Argentina Agreement and delivered it to UTA in late September 2016. (Counterclaims ¶ 18.) FEG Chile and Mirage also contracted for Carey to perform in Santiago, Chile on October 30, 2016 (the "Chile Agreements," and with the Argentina Agreement, the "Agreements"). (Counterclaims ¶¶ 20–22.) In two separate contracts, FEG Chile agreed to pay Carey a fee of $425,000 and a net payment of $175,000 for airfare and travel. (Counterclaims ¶¶ 20, 22.) Like the Argentina Agreement, the Chile Agreements set schedules for installment payments. (Counterclaims ¶¶ 23–24.) FEG Chile executed the Chile Agreements and delivered them to UTA in late September 2016. (Counterclaims ¶ 23.)

Under the Agreements, Carey had the right to cancel her performances if Counterclaimants failed to make timely installment payments. (Counterclaims ¶ 25.) But each contract provided a notice and cure provision: if Counterclaim Defendants believed that Counterclaimants were in breach, they agreed to provide written notification of the reasons for such breach and afford forty-eight hours to cure. (Counterclaims ¶ 26.)

---

[1] "A loan-out corporation is a legal fiction employed for the financial benefit of successful artists and entertainers. It is a duly organized corporation, typically wholly owned by an artist, the sole function of which is to 'loan out' the services of the artist-owner to producers and other potential employers." Bozzio v. EMI Grp. Ltd., 811 F.3d 1144, 1147 (9th Cir. 2016) (citation omitted).

Counterclaimants' payments were due in full by either September 8, 2016 or September 15, 2016. (See Decl. of Jordan W. Siev in Supp. of Counter-Defs.' Mot. to Dismiss, ECF No. 38 ("Siev Decl."), Exs. 1, 3.)[2] Counterclaimants failed to make payments according to the installment schedules. As of October 25, 2016, they had "wired a total of $703,100 to UTA . . . nearly 75% of all funds due." (Counterclaims ¶ 27.) In fact, Counterclaimants made late and/or deficient payments throughout late 2016 and never received objection from Counterclaim Defendants. (Counterclaims ¶¶ 30–32.) Counterclaimants allege that this was consistent with their business custom—installment schedules were rarely followed but "artists were always paid in full." (Counterclaims ¶ 12.)

On October 25, 2018, three days before the Argentina concert, Counterclaimants learned through media reports that Carey had cancelled the Argentina and Chile performances. (Counterclaims ¶¶ 36–37.) That evening, Carey tweeted "Devastated my shows in Chile, Argentina & Brazil[3] had to be cancelled. My fans deserve better than how some of these promoters treated them." (Counterclaims ¶ 41.) The Tweet linked to an E! News tweet, which in turn linked to an E! News article titled "Mariah Carey Cancels Part of her Latin America Tour Citing Promoter Negligence." (Counterclaims ¶ 42.) In that article, E! News reported that Carey had been forced to cancel the South American leg of her tour due to "promoter negligence." Mike Vulpo, Mariah Carey Cancels Part of Her Latin America Tour Citing Promoter Negligence, E! News (Jan. 10, 2017), https://www.eonline.com/news/804645/mariah-carey-cancels-part-of-her-latin-america-tour-citing-promoter-negligence. On October 26, 2016,

---

[2]  The Argentina and Chile Agreements may be considered as documents incorporated by reference into the Counterclaims. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

[3]  Carey's concert in Brazil was not contracted with Counterclaimants and is not implicated by this action.

3

Carey's production manager confirmed cancellation of the performances by email and UTA then returned more than $600,000 to Counterclaimants. (Counterclaims ¶¶ 38–39.)

In January 2017, Mirage sued Counterclaimants in California state court, asserting breach of contract. (See Decl. of Robert E. Allen in Supp. of Defs.' Notice of Removal of Action Under 28 U.S.C. § 1441(a), ECF No. 1-1, Ex. A ("Original Compl."); Ex. D, at 6–7.) In December 2017, Counterclaimants removed the action to the United States District Court for the Central District of California. (Defs.' Notice of Removal of Action Under 28 U.S.C. § 1441(a), ECF No. 1, at 1–2.) In January 2018, Counterclaimants filed an unopposed motion to transfer to this district. (Defs.' Notice of Mot. and Unopposed Mot. to Transfer Venue, ECF No. 12, at 1–2.) While that motion was pending, Counterclaimants answered and asserted these counterclaims. Although the original claims were brought solely by Mirage, Counterclaimants added Carey as a counterclaim defendant. The Central District of California subsequently granted Counterclaimants' transfer motion. (See Order Granting Defs.' Mot. to Transfer Venue to the Southern District of New York, ECF No. 16.)

In their motion to dismiss, Counterclaim Defendants contend that emails sent by UTA to Counterclaimants demonstrate that Counterclaimants were provided notice of breach and an opportunity to cure, meaning that Counterclaim Defendants did not unilaterally breach the Agreements. They also contend that Carey is an improper defendant for the breach of contract counterclaims. Finally, Counterclaim Defendants contend that the defamation counterclaim should be dismissed.

## LEGAL STANDARD

"To avoid dismissal, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" Hardaway v. Hartford Public Works Dep't, 879 F.3d 486,

4

489 (2d Cir. 2018) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Tannerite Sports, LLC v. NBCUniv. News Grp., a Division of NBCUniv. Media, LLC, 864 F.3d 236, 247 (2d Cir. 2017) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A court "accept[s] the complaint's factual allegations as true and draw[s] all reasonable inferences in the plaintiff's favor." Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC, 750 F.3d 227, 232 (2d Cir. 2014) (citation omitted).

A "complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (citation and quotation marks omitted). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." Chambers, 282 F.3d at 153 (citing Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).

## DISCUSSION

I. Breach of Contract

    A. Emails Attached to Counterclaim Defendants' Motion

In moving to dismiss the breach of contract counterclaims, Counterclaim Defendants attach six email chains to their motion. (See Siev Decl. Exs. 4–9.) They contend that these emails demonstrate that Counterclaimants were provided notice and an opportunity to cure their deficient payments. Further, they assert that this Court may take judicial notice of

5

these emails as matters integral to the pleading even though they were not attached or incorporated into the Counterclaims.

When a document is not attached to a pleading or incorporated by reference, a court may nevertheless consider it when "integral to the [pleading]," I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., 936 F.2d 759, 762 (2d Cir. 1991), such that the pleading "relies heavily upon its terms and effect," Int'l Audiotext, 62 F.3d at 72.  The Second Circuit has held that this standard "has been misinterpreted on occasion" and has therefore clarified that "a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."  Chambers, 282 F.3d at 153 (emphasis original).  This reliance standard is strictly enforced because "[c]onsideration of extraneous material in judging the sufficiency of a complaint is at odds with the liberal pleading standard." Chambers, 282 F.3d at 154; see also In re Lyondell Chem. Co., 491 B.R. 41, 50 n.48 (Bankr. S.D.N.Y. 2013) (recognizing that in Chambers, the Second Circuit "cut back on [its] earlier, broader, pronouncements" regarding this standard).

The Counterclaims do not explicitly reference the emails attached to Counterclaim Defendants' motion to dismiss.  Counterclaimants pled that they "w[ere] in constant communication with UTA [and] [t]here was no correspondence in accordance with the Notice and Cure Provisions that would have alerted [Counterclaimants] that Carey was going to cancel her performances absent immediate payment of any outstanding amounts due." (Counterclaims ¶ 31.)  They also allege that "[a]t no time . . . did Mirage or Carey raise any issues concerning cancellation of the Argentina or Chile Performances."  (Counterclaims ¶ 32.)

Those allegations are insufficient to conclude that Counterclaimants "relied" on these emails, that they were incorporated by reference, or that they were "integral" to drafting the Counterclaims. "[T]he co[unterclaims] make[] no explicit or implicit reference to" these specific emails, "nor does it quote" from them. DeLuca v. Accessit Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (declining to consider certain documents on a motion to dismiss that were not described in complaint); see also Goldman v. Belden, 754 F.2d 1059, 1066 (2d Cir. 1985) ("[L]imited quotation does not constitute incorporation by reference."); Tammaro v. City of New York, 2018 WL 1621535, at *4 (S.D.N.Y. Mar. 30, 2018) ("[T]he mere fact that [the plaintiff] may have had notice or possession of [documents] or that he mentioned the [documents] in the complaint is insufficient.").

Further, to consider documents outside of the pleadings on a motion to dismiss, "[i]t must . . . be clear that there exist no material disputed issues of fact regarding the relevance of the document[s]." Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006); see DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 112 (2d Cir. 2010) (reversing district court's dismissal of breach of contract claim where the parties raised factual issues regarding documents the court considered). In their motion papers, the parties raise a number of issues regarding these emails, such as whether UTA intended them to constitute notice of breach, whether UTA was entitled to provide such notice, and whether Counterclaimants should have interpreted them as such. Those issues underscore why consideration of the email chains is improper at this stage. "The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006) (emphasis original). "[W]hen a district court considers . . . extra-pleading materials and excludes

7

others, it risks depriving the parties of a fair adjudication of the claims by examining an incomplete record." Chambers, 282 F.3d at 155.

At bottom, Counterclaims Defendants seek to "test the factual underpinnings of the [Counterclaims]," but the appropriate vehicle for such a test is to "submit proper evidence outside the pleadings and move for summary judgment under Rule 56." See LaBounty v. Adler, 933 F.2d 121, 123 (2d Cir. 1991). Without the emails, Counterclaim Defendants' argument to dismiss the breach of contract counterclaims collapses.

B. Carey as a Party

Counterclaim Defendants also contend that Carey should be dismissed from the breach of contract counterclaims because she was not a party to those Agreements, which were between only Counterclaimants and Mirage. (See Siev Decl. Exs. 1–3.) "It is hornbook law that a nonsignatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract." Mazzei v. Money Store, 308 F.R.D. 92, 109 (S.D.N.Y. 2015) (citation and quotation marks omitted). In response, Counterclaimants aver that Carey may be held liable because she is Mirage's "alter-ego," meaning that this Court may pierce the corporate veil.

"New York law permits a plaintiff to 'pierce the corporate veil' and sue a non-signatory for breach of contract when the non-party is an alter ego of one or more signatories." Javier v. Beck, 2014 WL 3058456, at *9 (S.D.N.Y. July 3, 2014). "[A] court may pierce the corporate veil where (i) the owner exercised complete domination over the corporation with respect to the transaction at issue, and (ii) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." Boroditskiy v. European Specialties LLC, -- F. Supp. 3d --, 2018 WL 2538509, at *5 (S.D.N.Y. 2018) (citation and quotation marks omitted).

"Whether the alleged alter-ego entity 'exercised complete domination' . . . is highly case-specific and must be made in view of 'the totality of the facts.'" LiquidX Inc. v. Brooklawn Capital, LLC, 254 F. Supp. 3d 609, 617 (S.D.N.Y. 2017) (citation omitted). Whether Carey exercised complete domination over Mirage is an issue of fact. But Counterclaimants fail to satisfy the second prong to pierce the corporate veil—they do not allege that Carey's domination "abused the privilege of doing business in the corporate form." Morris v. N.Y. State Dep't of Taxation & Fin., 623 N.E.2d 1157, 1161 (N.Y. 1993). "[D]omination, standing alone, is not enough; some showing of a wrongful or unjust act toward [the] plaintiff is required." Morris, 623 N.E.2d at 1161. Critically, the wrongful or unjust act "must consist of more than merely the . . . breach of contract that is the basis of the [party's] lawsuit." Tradewinds Airlines, Inc. v. Soros, 2012 WL 983575, at *6 (S.D.N.Y. Mar. 22, 2012) (citing NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 183 (2d Cir. 2008).

Counterclaimants plead that Mirage "is the personal loan out corporation of Carey," Carey's "corporate alter ego," and that Carey serves as Mirage's Chief Executive Officer and sole shareholder. (See Counterclaims ¶¶ 6–9.) But nothing in those allegations suggest that Carey operated Mirage for a fraudulent purpose or that there was an abuse of the corporate form. Counterclaimants do not allege that there was a "lack of corporate formalities, comingling of funds, [or] self-dealing." In re MBM Entm't, LLC, 531 B.R. 363, 420 (Bankr. S.D.N.Y. 2015). Indeed, loan-out corporations seem to be common—Counterclaimants themselves plead that "[s]uccessful musical artists typically create . . . loan out corporation[s] . . . whose function is to furnish the personal services of the artist." (Counterclaims ¶ 15 n.2 (quotation marks omitted).) See also Otano v. Ocean, 2013 WL 2370724, at *2–3 (C.D. Cal. May 30, 2013) (dismissing loan-out corporation where complaint failed to demonstrate its liability).

9

A summary allegation that Mirage operates solely for Carey's benefit is insufficient. "It is well established . . . that a business can be incorporated for the very purpose of enabling its proprietor to escape personal liability . . . even though the proprietor continues to benefit from the business's success." Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc., 126 F. Supp. 3d 388, 402 (S.D.N.Y. 2015) (citation omitted); see Nelson v. Adams USA, Inc., 529 U.S. 460, 471 (2000) ("One-person corporations are authorized by law and should not lightly be labeled [a] sham."); Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs. Inc., 952 F. Supp. 2d 542, 578 (S.D.N.Y. 2013) ("[T]he mere fact that an individual is the sole member, shareholder, or a controlling person in an entity does not, by itself, justify piercing the corporate veil.")

Therefore, Counterclaimants allege only that Mirage breached the Agreements. "[I]t is well-established that an ordinary breach of contract, without evidence of fraud or corporate misconduct, is not sufficient to pierce the corporate veil." Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A., 270 F. Supp. 3d 716, 732 (S.D.N.Y. 2017); see also Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P., 491 B.R. 335, 350 (S.D.N.Y. 2013) (dismissing veil piercing claim where plaintiff did "not adequately allege[] . . . that [defendant] used its . . . corporate form[] as a 'sham' to perpetrate a 'fraud or injustice'" (citation omitted).) "Since [Counterclaimants] ha[ve] not made any showing that there has been an abuse of corporate form or other fraudulent conduct, [they] cannot carry the 'heavy burden' required to apply the veil piercing/alter ego theory." Spano v. V&J Nat'l Enters., LLC, 264 F. Supp. 3d 440, 452 (W.D.N.Y. 2017) (citation omitted). Accordingly, Carey is dismissed from the breach of contract counterclaims.

II. <u>Defamation</u>

　A. <u>Statute of Limitations</u>

Counterclaimants bring a defamation claim based on the Tweet. They contend that the Tweet was knowingly false and damaged Counterclaimants' reputation. (Counterclaims ¶¶ 63–71.) Counterclaim Defendants first assert that this claim is time-barred. In New York, a defamation claim must be brought within one year. N.Y. C.P.L.R. § 215(3). The limitations period begins accruing when "the libelous material first was published, that is, displayed to a third party." <u>Tucker v. Wyckoff Heights Med. Ctr.</u>, 52 F. Supp. 3d 583, 596–97 (S.D.N.Y. 2014) (citation omitted). Carey posted the Tweet on October 25, 2016. (Counterclaims ¶ 41.) Counterclaimants filed the counterclaims in January 2018, exceeding the one-year period. However, under C.P.L.R. § 203, "[a] defense or counterclaim is not barred if it was not barred at the time the claims asserted in the complaint were interposed." N.Y. C.P.L.R. § 203(d). Mirage filed this action in January 2017. (<u>See</u> Original Compl., at 7.) Because Carey published the Tweet three months before Mirage filed suit, Counterclaimants' defamation claim was not time-barred at the time that Mirage interposed its claims.[4]

　B. <u>Mirage as a Party</u>

Second, Counterclaim Defendants assert that Mirage is not a proper party to the defamation claim because the Tweet is solely attributable to Carey. In response, Counterclaimants once again assert that Mirage and Carey are alter-egos and that Carey posted the Tweet within her authority as an officer of Mirage. "A corporation may be held liable for

---

[4] Counterclaim Defendants assert that this counterclaim is nevertheless time-barred because it lacks a "close nexus" to Mirage's original claims. But Counterclaim Defendants misinterpret N.Y. C.P.L.R. § 203(d) and the cases that they cite. The "close-nexus" requirement is required only when a counterclaim is <u>still time-barred</u> at the time that the original claims were filed. <u>See</u> Siegel, N.Y. Prac. § 48 (6th ed. 2018). When a counterclaim was not time-barred at the time of the complaint, the plain language of § 203(d) applies.

11

defamatory utterances made by its officer or agent, acting within the scope of [her] authority."
Unker v. Joseph Markovits, Inc., 643 F. Supp. 1043, 1049 (S.D.N.Y. 1986).  Although "a corporation can only speak through its officers, employees, and authorized agents," Treppel v. Biovail Corp., 2005 WL 2086339, at *3 (S.D.N.Y. Aug. 30, 2005), that does not mean that every statement of an officer is a statement of the corporation, cf. Treppel, 2005 WL 2086339, at *3 (holding that not every statement of a corporation can be attributable to every officer within that corporation).

    Counterclaimants fail to plead that Carey posted the Tweet within the scope of her authority as an officer of Mirage.  Rather, they plead that "Carey released a public statement" in which "Carey . . . insinuate[d] that [Counterclaimants] had somehow mistreated concertgoers in South America."  (Counterclaims ¶ 41 (emphasis added).)  The Tweet was posted to Carey's personal Twitter account and did not mention Mirage or the Agreements.  (See Counterclaims ¶ 41.)  Indeed, Counterclaimants refer to the Tweet as "Carey's Tweet."  (See Counterclaims ¶¶ 42, 63 (emphasis added).)  See Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A., 14 F. Supp. 3d 191, 215 (S.D.N.Y. 2014) (dismissing slander claim against corporation where plaintiff alleged "no more than a conclusory allegation that the statements were made by 'an agent of [the corporation]'"); cf. Genesis Int'l Holdings v. Northrop Grumman Corp., 238 F. App'x 799, 802 (3d Cir. 2007) (finding that the pleading sufficiently pled vicarious liability for defamation based on factual allegations demonstrating that the employee was speaking within the scope of his employment).

    Counterclaimants' contention that Mirage and Carey are alter-egos is unpersuasive because Counterclaimants fail to allege that Carey's use of Mirage was in any way improper.  "[T]here is a presumption of separateness between a corporation and its owners,

12

which is entitled to substantial weight." CBF Industria de Gusa S/A v. AMCI Holdings, Inc., -- F. Supp. 3d --, 2018 WL 3014091, at *6 (S.D.N.Y. 2018); see Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 138 (2d Cir. 1991) ("The critical question is whether the corporation is a 'shell' being used by the individual shareowners to advance their own purely personal rather than corporate ends." (citation and quotation marks omitted)).

This pleading deficiency precludes holding Mirage liable for the Tweet. Accordingly, Mirage is dismissed from the defamation counterclaim. See Mackay v. Real Cars, Inc., 626 N.Y.S.2d 548, 549 (N.Y. App. Div. 1995) (affirming dismissal of defamation claim against company where "plaintiffs . . . failed to show that the author wrote the article on behalf of [the company], or in his capacity as president of [the company]").

C. Defamation Claim Against Carey

Turning to the merits of the defamation claim against Carey, Counterclaim Defendants contend the Tweet is not actionable because it was Carey's opinion. It is a question of law whether the disputed statements in a defamation claim are "of fact, which may be defamatory, [or] expressions of opinion, which are not." Live Face on Web, LLC v. Five Boro Mold Specialist Inc., 2016 WL 1717218, at *2 (S.D.N.Y. Apr. 28, 2016) (citation and quotation marks omitted). "[I]f the statements are held to be expressions of opinion, they are entitled to the absolute protection of the First Amendment . . . ." Steinhilber v. Alphonse, 501 N.E.2d 550, 552 (N.Y. 1986); see also Gross v. N.Y. Times Co., 623 N.E.2d 1163, 1167 (N.Y. 1993) (noting that because "only 'facts' are capable of being proven false, it follows that only statements alleging facts can properly be the subject of a defamation action" (citation and quotation marks omitted)). In making this determination, "statements must . . . be viewed in their context in order for courts to determine whether a reasonable person would view them as expressing or implying any facts."

13

Immuno AG. v. J. Moor-Jankowski, 567 N.E.2d 1270, 1278, 1281 (N.Y. 1991) (emphasis omitted) (holding that a court must consider a statement's "tone and apparent purpose").

New York courts employ a three-part test in determining whether a statement is of fact or opinion:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact.

Gross, 623 N.E.2d at 1167 (citation, quotation marks, and alteration omitted). Here, the Tweet: (1) linked to an E! News article regarding Carey's South American concerts; and (2) stated "Devastated my shows in Chile, Argentina & Brazil had to be cancelled. My fans deserve better than how some of these promoters treated them." (Counterclaims ¶ 41.) Viewed in context, Carey tweeted an opinion. What Carey's fans "deserve" and whether they "deserve better" than how some promoters "treated them" is conjectural and vague. "[It] may mean different things to different people, and [is] not capable of being proven true or false because of [its] subjective, relative meaning[]." Live Face on Web, 2016 WL 1717218, at *2; see 43A N.Y. Jur. 2d Defamation & Privacy § 17 (2018) ("A statement that is indefinite, ambiguous, and incapable of being objectively characterized as true or false falls within the category of pure opinion."); Gross, 623 N.E.2d at 1167 ("The dispositive inquiry . . . is whether a reasonable reader could have concluded that the [statements] were conveying facts about the plaintiff . . . ." (citation, quotation marks, and alterations omitted)). A jury could not determine whether Carey's fans "deserve better" because there is no objective standard to which that statement can be compared. See Buckley v. Littell, 539 F.2d 882, 893 (2d Cir. 1976) (rejecting defamation claim based on

14

the "tremendous imprecision of the meaning" of the challenged statements); Hollander v. Cayton, 536 N.Y.S.2d 790, 792 (N.Y. App. Div. 1988) (statements that physician was "'immoral', 'unethical', and had 'mismanaged cases'" were not actionable as they were "incapable of being objectively characterized as true or false").

Counterclaimants contend that the Tweet is an actionable "mixed-opinion" because it implied facts that Carey did not disclose. "Though some statements may be characterized as hypothesis or conjecture, they may yet be actionable if they imply that the speaker's opinion is based on the speaker's knowledge of facts that are not disclosed to the reader. . . . On the other hand, if a statement of opinion either discloses the facts on which it is based or does not imply the existence of undisclosed facts, the opinion is not actionable." Levin v. McPhee, 119 F.3d 189, 197 (2d Cir. 1997).

But here, Carey provided the basis for her opinion—the E! News article reporting that Carey's concerts had been cancelled. It would be clear to any reader that Carey's opinion that her fans "deserve better" was based on the contents of that article. See Brahms v. Carver, 33 F. Supp. 3d 192, 200 (E.D.N.Y. 2014) (dismissing defamation claim because the internet posting at issue "was accompanied by the news article on which it was so obviously based"). Accordingly, Carey did not imply that she "knows certain facts, unknown to the audience, which support[ed] [her] opinion." See Davis v. Boeheim, 22 N.E.3d 999, 1004 (N.Y. 2014) (citation and alteration omitted). Rather, by linking to the E! News article, she provided the basis for her opinion, and surmised that her fans "deserved better." In any event, Carey's concern of what her fans deserve is not "verifiable as either true or false." See Jessel Rothman, P.C. v. Sternberg, 615 N.Y.S.2d 748, 750 (N.Y. App. Div. 1994) ("[I]f a statement is not verifiable, then a plaintiff cannot provide it false, and the statement cannot be actionable . . . .").

"New York Courts have consistently protected statements made in online forums as statements of opinion rather than fact." Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC, 151 F. Supp. 3d 287, 295 (E.D.N.Y. 2015) (collecting cases demonstrating that online posts and blogs tend to be of opinion). Viewed in context, Carey was not implying facts about Counterclaimants, but expressing her wish that her fans had been able to attend her South American concerts. Such an abstract desire is incapable of being termed defamatory.

To the extent that Counterclaimants allege that the E! News article is in itself a defamatory statement attributable to Carey (an argument referred to in their briefing), such an allegation is insufficiently pled. A fair reading of the Counterclaims make clear that this counterclaim is based solely on the Tweet, not whatever statements Carey provided to E! News. (See, e.g., Counterclaims ¶¶ 63, 65–66 ("Carey's Tweet, was defamatory . . . The Tweet was published and broadcast through the Twitter Network to over 16.8 million followers. . . . The Tweet was false.") No substantive allegations describe Carey's statements to E! News, what they were, when they were given, or how they damaged Counterclaimants. Instead, the Counterclaims' allegations all concern the Tweet. (See Counterclaims ¶ 68 ("The Tweet was a substantial factor in causing [Counterclaimants] to suffer financial loss . . . .").)

In fact, Counterclaimants' sole reference to the E! News story is two assertions stating that "Carey's Tweet linked to an 'Exclusive' story published by E! News . . . . That story further repeated and spread Carey's false statements . . . ." (Counterclaims ¶ 42.) These conclusory allegations are devoid of underlying facts. See Iqbal, 556 U.S. at 678 (pleadings "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and will not suffice "if [they] tender[] 'naked assertion[s]' devoid of 'further factual enhancements'" (citing Twombly, 550 U.S. at 555, 557)). Accordingly, Counterclaimants fail to make out a

16

separate defamation claim based on the E! News article. See Rohn Padmore, Inc. v. LC Play Inc., 679 F. Supp. 2d 454, 460 (S.D.N.Y. 2000) (holding that the failure to state "the time and manner in which the publications were made" was fatal to plaintiff's defamation claim).

Finally, Counterclaimants' contention that the Tweet was defamatory by linking to the E! News article is without merit. Although one who republishes defamatory content may be liable, see Restatement (Second) of Torts § 578 (1977), "[a] hyperlink . . . does not duplicate the content of a prior publication; rather, it identifies the location of an existing publication," Doctor's Data, Inc. v. Barrett, 170 F. Supp. 3d 1087, 1137 (N.D. Ill. 2016); see In re Phila. Newspapers, LLC, 690 F.3d 161, 175 (3d Cir. 2012) ("[T]hough a link and reference may bring readers' attention to the existence of an article, they do not republish the article."). This can be contrasted with Enigma Software Group USA v. Bleeping Computer LLC, in which the district court determined that a republishing had been demonstrated through the defendant not only linking to previously published material, but also restating that material. 194 F. Supp. 3d 263, 278 (S.D.N.Y. 2016). The fact that Carey linked her Tweet to the E! News article does not constitute a republication of that article.

## CONCLUSION

For the foregoing reasons, Counterclaim Defendants' motion to dismiss the counterclaims is granted in part and denied in part. The defamation counterclaim is dismissed. The breach of contract counterclaims against Carey are dismissed. The Clerk of Court is directed to terminate the motion pending at ECF No. 37.

Dated: August 29, 2018
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

17